1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL TAYLOR,** | Case No.  15-cv-05462-YGR |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO REMAND** |
| **INTERSTATE GROUP, LLC,** | Re: Dkt. No. 10 |
| Defendant. | |

12    Plaintiff Russell Taylor filed the instant action in the Superior Court for the State of

13 California, County of Sonoma, on behalf of himself and a putative class of similarly situated

14 employees alleging violations of California Labor Code sections for, *inter alia*, unpaid overtime,

15 unpaid meal and rest period premiums, unpaid vacation wages, waiting time penalties, incorrect

16 wage statements, and unfair business practices.  Plaintiff also seeks civil penalties pursuant to

17 California's Labor Code Private Attorney Generals Act ("PAGA") and Labor Code section 558.

18 On November 30, 2015, Defendant Interstate Group, LLC removed the action based on diversity

19 jurisdiction, 28 U.S.C. § 1332(a)(1).  (Dkt. No. 1, Notice of Removal, "NOR.")

20    Currently pending before the Court is Plaintiff's motion to remand the case, arguing that

21 Defendant has not established the amount in controversy exceeds $75,000.  (Dkt. No. 10, "Mtn.")

22 Having read and carefully considered the papers submitted, the admissible evidence, the pleadings

23 in this action, oral argument held on February 2, 2016, and the parties' supplemental briefing, the

24 Court hereby **GRANTS** the motion.

25    **I.    BACKGROUND**

26    Defendant owns and operates eight TrailersPlus stores in California, which specialize in

27 the sale of recreational trailers.  (NOR, Exh. A., "Compl." ¶ 26.)  Plaintiff was employed by

28 Defendant at a TrailersPlus store, first as a sales representative and then as store manager, until he

was terminated in November 2014.  (Dkt. No. 12, Exh. 1, "Snow Oppo. Decl." ¶ 2; Compl. ¶ 27.)
Throughout his employment, Defendant was paid every other Thursday, or on a two-week pay
period.  (NOR, Exh. E., "Snow Decl." ¶ 4.)

On August 31, 2015, Plaintiff provided written notice of alleged Labor Code violations in
connection with his employment with Defendant to the Labor and Work Force Development
Agency ("LWDA") via certified mail.  (Compl. ¶ 24.)  Plaintiff brought this action in state court
against Defendant on October 28, 2015, asserting nine separate claims.  (*Id*.)  Plaintiff alleges that
Defendant violated the Labor Code by failing to: (i) pay overtime to store managers in violation of
Cal. Labor Code sections 510, 1194, and 1198; (ii) pay overtime to nonexempt employees in
violation of Cal. Labor Code sections 510, 1194, and 1198; (iii) provide meal periods in violation
of Cal. Labor Code sections 226.7 and 512; (iv) provide rest periods in violation of Cal. Labor
Code section 226.7; (v) pay vested vacation wages in violation of Cal. Labor Code section 227.3;
(vi) pay wages in a timely manner upon termination in violation of Cal. Labor Code sections 201,
202, and 203; and (vii) provide compliant wage statements in violation of Cal. Labor Code section
226(a).  Plaintiff also asserts claims under California's Unfair Competition Law, Cal. Bus. & Prof.
Code sections 17200, *et seq*., and a cause of action pursuant to PAGA, Cal. Labor Code section
2698, *et seq*.  Finally, Plaintiff asserts that he has satisfied the administrative pre-requisites to
recover civil penalties under Cal. Labor Code section 558.  (Compl. ¶¶ 25, 124.)  In his complaint,
Plaintiff seeks to represent a class of similarly situated employees, which Defendant claims would
have 115 members.  (Snow Decl. ¶ 6.)

On November 30, 2015, Defendant timely removed the action to this Court.  (*See* NOR.)
Plaintiff now moves to remand the case to Sonoma County Superior Court.  Plaintiff contends that
the amount in controversy falls far below the $75,000.01 threshold.  *See* 28 U.S.C. § 1332(a)(1)
("the matter in controversy *exceeds* the sum or value of $75,000…") (emphasis supplied).

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of
America*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by
Constitution and statute").  A defendant may remove a civil action from state court if the action

United States District Court
Northern District of California

United States District Court
Northern District of California

could have originally been filed in federal court.  28 U.S.C. § 1441.  A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure.  28 U.S.C. § 1447(c).  The removal statutes are strictly construed, so as to limit removal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

A district court must remand a case if it appears before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  There is typically a strong presumption against finding removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  The party seeking removal "has the burden to prove, by a preponderance of the evidence, that removal is proper."  *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1007 (9th Cir. 2010).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus*, 980 F.2d at 566; *accord Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  The court "resolves all ambiguity in favor of remand to state court."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

### III.   DISCUSSION

The parties dispute the amount in controversy for all but one of the claims.[1]  However, the Court need not reach the amount in controversy for all claims.  Resolution of the amount in controversy with respect to PAGA penalties, Section 558 penalties, and attorney's fees shows that Defendant has not met its burden, irrespective of the remaining claims.  Thus, for the purposes of argument and this decision only, the Court assumes the validity of Defendant's remaining estimates.  Adopting Defendant's estimates with respect to unpaid meal and rest periods,[2] unpaid

---

[1] The sole exception is Plaintiff's wage statement claim, which both parties agree is $4,000.

[2] For the unpaid meal and rest period claims, the Court adopts the estimate Defendant put forth in its initial opposition (Dkt. No. 12), rather than the amount proffered in its supplemental brief (Dkt. No. 18, "Suppl. Oppo."), as Defendant provided no legal basis for the Court to adopt the latter.  Without any authority supporting Defendant's supplemental estimate, the Court declines to adopt it for purposes of the instant motion.

3

overtime, unpaid vacation wages, wage statement penalties, and waiting time penalties, this places the amount in controversy at $46,877.48 as follows:

| Claim | Amount in Controversy |
|---|---|
| *Meal and Rest Period* | $22,816.37 |
| *Overtime* | $15,310.52 |
| *Vacation* | $701.79 |
| *Wage Statement* | $4,000 |
| *Waiting Penalties* | $4,048.80 |
| **TOTAL** | $46,877.48 |
| **AMOUNT NEEDED TO EXCEED $75,000** | $28,122.53 |

As shown above, for the amount in controversy to exceed the threshold of $75,000, Defendant must establish the amount in controversy for these claims totals a minimum of $28,122.53. The Court thus addresses PAGA penalties, Section 558 penalties, and attorney's fees only. The Court will then turn to Defendant's argument that Plaintiff's failure to stipulate to an amount in controversy less than $75,000 should weigh against remand.

**A. Penalties Recoverable Under PAGA & Labor Code Section 558**

The parties principally dispute the impact of the statute of limitations on the amount that Plaintiff may recover for penalties under both PAGA and Section 558. Additionally, with respect to PAGA penalties only, Defendant raised in its supplemental brief that penalties for subsequent violations may be recoverable daily instead of per pay period, as previously agreed by the parties. The Court addresses the amount in controversy for each civil penalty in turn.

*1. PAGA Penalties*

There are two disagreements between the parties with respect to PAGA penalties. First, Defendant argues for the first time in its supplemental brief that, as a matter of law, it is unsettled whether PAGA subsequent violation penalties are authorized per day or per pay period. Given this "open question," Defendant urges the Court to assume PAGA penalties could be awarded

4

United States District Court
Northern District of California

1   daily for the purpose of determining the amount in controversy.  (Suppl. Oppo. at 1:16-19, n.2.)

2   By contrast, Plaintiff contends he has not sought daily PAGA penalties, the statute does not

3   authorize such, and even states he is willing to stipulate to seek PAGA penalties per pay period.

4   The Court agrees with Plaintiff's interpretation of his complaint and the statute, and finds the

5   proffer to stipulate especially persuasive.

6          PAGA clearly provides, "If, at the time of the alleged violation, the person employs one or

7   more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee *per*

8   *pay period* for the initial violation and two hundred dollars ($200) for each aggrieved employee

9   *per pay period* for each subsequent violation."  Cal. Lab. Code § 2699(f)(2) (emphasis supplied).

10  Defendant provides no indication that a court could interpret this clear statutory language to allow

11  PAGA penalties per day, rather than per pay period.  Put simply, Defendant's assertion that

12  Plaintiff could claim daily penalties fails as a matter of law.  Accordingly, the Court turns to the

13  dispute over the number of pay periods to which PAGA penalties apply.

14         Second, the parties dispute the impact of the statute of limitations on the PAGA penalty

15  calculation.  Defendant correctly assumes a one-year statute of limitations and a two-week pay

16  period.  In that regard, the parties agree that Plaintiff was paid on a two-week pay period, and that

17  a one-year statute of limitation applies to PAGA civil penalties is well settled.  *See Martinez v.*

18  *Antique & Salvage Liquidators, Inc.*, 2011 WL 500029, at *7 (N.D.Cal. Feb. 8, 2011) (holding

19  that PAGA penalties are subject to one-year statute of limitation and listing the "many courts" that

20  have found the same).  Thus, the parties agree on the underlying assumptions in Defendant's

21  calculation.  Where they disagree, however, is the impact of the statute of limitations, and tolling,

22  in the context of the facts of this case.

23         The one-year limitations period for PAGA civil penalties begins to toll upon filing notice

24  to the LWDA for a PAGA investigation.  *See Ramirez v. Ghilotti Bros, Inc.*, 941 F.Supp.2d 1197,

25  1209 (N.D.Cal. 2013) ("PAGA itself provides that the statute of limitations is tolled while a

26  plaintiff exhausts his administrative remedies with [LWDA] prior to suit, which is required by the

27  statute").  Here, PAGA's one-year statute of limitation began tolling on August 31, 2015, when

28  Plaintiff provided notice to the LWDA.  Therefore, based on the complaint and Defendant's

5

declaration, Plaintiff contends that his individual claim for PAGA penalties may only go back to August 31, 2014, *i.e.* one year prior to notice on LWDA.  Plaintiff further contends he cannot recover penalties past November 2014, the date of his termination.  (Snow Oppo. Decl. ¶ 2; Compl. ¶ 27.)  Plaintiff's position that he cannot recover PAGA penalties for the pay periods following November 2014, when he was not in Defendant's employ, comports with both logic and the law.  *See* Cal. Labor Code § 2699.3(d); *Ramirez*, 941 F.Supp.2d at 1209;  *Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, 1009 (N.D.Cal. 2007) (granting defendant's motion to dismiss because plaintiff's claim was time-barred by PAGA's one-year statute of limitations); *Moreno v. Autozone, Inc.*, 2007 WL 1650942, at *4 (N.D.Cal. June 5, 2007) (twenty months expired between employee's termination and delivery of statutory notice to LWDA, proving "fatal to the [PAGA] claim under the one-year limitations period").  Whereas Defendant assumes that Plaintiff may seek a year's worth of PAGA penalties—26 pay periods—it appears that only five pay periods can conceivably be in dispute.

In response, Defendant does not deny that PAGA has a one-year statute of limitations and that the tolling period commences upon providing notice, nor does Defendant dispute the accuracy of the dates supplied by Plaintiff.  Rather, Defendant contends that the existence of a statute of limitations constitutes a potential defense and, in Defendant's view, potential defenses do not affect the amount in controversy calculation.  In that regard, Defendant points to Plaintiff's own words and calculations in his August 31, 2015 settlement letter, (NOR, Exh. G), and his December 16, 2015 meet and confer letter, (Mtn., Exh. A), in which Plaintiff sought a full year's worth of PAGA penalties.  Defendant asserts that these letters should control with regard to the amount in controversy.  The Court declines Defendant's invitation to adopt overstatements of potential recovery found in demand letters and to ignore the unambiguous application of PAGA's statute of limitations on Plaintiff's individual claim.

Defendant relies on cases where, unlike here, plaintiffs alleged specific sums in their original state court complaints that were in excess of the jurisdictional threshold, and then sought to invoke defenses to escape federal jurisdiction.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (holding that plaintiff cannot "reduce the amount of his demand" of

United States District Court
Northern District of California

$4,000 in his original state court complaint to defeat the $3,000 jurisdictional threshold); *Riggins v. Riggins*, 415 F.2d 1259, 1260 (9th Cir. 1969) (plaintiff not entitled to remand on theory of potential statute of limitations defense where she pled $30,750 in her original state court complaint, which exceeded the $10,000 jurisdictional threshold). Courts regularly distinguish the former type of case, where the original complaint clearly claims a specific sum that exceeds the jurisdictional threshold, from those like this one in which "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699-700 (9th Cir. 2007). Importantly, these two types of cases are subject to different burdens of proof. *Id*. Where a plaintiff has alleged an amount in controversy over the jurisdictional threshold in his original complaint, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury*, 303 U.S. at 288-89. In such a case, the existence of a potential defense does not justify remand unless it is "obvious" from the face of the complaint that the suit "cannot involve the necessary amount." *Id*. at 291-92. By contrast, here, the amount Plaintiff pled in the complaint is ambiguous, and so the "legal certainty" test does not apply. Instead, Defendant carries a preponderance of the evidence burden of proof for jurisdictional purposes. *Guglielmino*, 506 F.3d at 699-700; *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).

Plaintiff's demand letters seeking a full year of PAGA penalties, while proper evidence, do not alter the burden of proof for Defendant. *See Cohn v. Pestsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (demand letters constitute "relevant evidence of the amount in controversy"). Defendant provides no case law to the contrary. Moreover, even if the legal certainty standard did apply, the Court finds that Plaintiff's statute of limitations defense would still prevail. It is "obvious" from the face of the complaint – and Defendant does not even dispute – that Plaintiff only worked two months (approximately five pay periods) within the limitations period. *See St. Paul Mercury*, 303 U.S. at 291-92.

Defendant primarily relies on *Riggins* to support its argument that the Court should consider a full year, rather than only two months, of PAGA penalties for purposes of the amount in controversy. Unlike in *Riggins*, the applicable limitations period here is known. In *Riggins*, the

extent to which Nevada's six-year statute of limitations would reduce the amount in controversy was unclear because the applicability of the statute itself was uncertain.  415 F.2d at 1262.  There, important jurisdictional facts were not disclosed by the complaint.  *Id*.  Without disclosing facts like "when the decedent first made his home in the state," the defense under Nevada's statute of limitations was a mere possibility because the court could not discern its applicability on the face of the complaint.  *Id*.  Furthermore, the *Riggins*' parties' briefing was unclear as to "why it is that the six-year statute of limitations must be measured from the date that the action was filed rather than from the date of death."  *Id*.

Here, the parties do not dispute that the complaint contains the facts necessary to conclude to a legal certainty that the statute of limitations not only applies, but also that it limits Plaintiff's recovery of PAGA penalties to – at most – five pay periods.  Defendant does not contest Plaintiff's dates of employment or the date Plaintiff provided notice to LWDA.  In addition, the method of measuring the statute of limitations is clear; Defendant has not raised any opposition with respect to how Plaintiff calculates the tolling period.

In sum, the Court finds no support for Defendant's argument that the Court should ignore the statute of limitations, tolling, and Plaintiff's dates of employment.  Accordingly, the Court finds that PAGA penalties for only the five pay periods Plaintiff actually worked between August 31, 2014 and November 2014 are in controversy.  PAGA provides for a civil penalty of $100 for any initial violation, and $200 for each subsequent violation per pay period.  Cal. Labor Code § 2699(f)(2).  Here, Plaintiff asserts five statutory violations per pay period ("5 Claims").  Thus, the calculations are as follows:

| | |
|---|---|
| 1st Pay Period: | 5 Claims x $100 = $500, plus |
| 4 Subsequent Pay Periods: | 5 Claims x $200 x 4 = $4,000 |

The total PAGA penalties at issue are therefore $4,500.

### 2. Labor Code Section 558 Penalties

Labor Code section 558 applies to violations of provisions regulating "hours and days of work in any order of the Industrial Welfare Commission."  Cal. Labor Code § 558(a).  Similar to PAGA penalties, a one-year statute of limitations applies to penalties recoverable under section

United States District Court
Northern District of California

1    558.  *Yadira v. Fernandez*, 2011 WL 2434043, at *5 (N.D.Cal. June 14, 2011).  Claims for civil

2    penalties under Section 558 require the same exhaustion of administrative remedies (notice to

3    LWDA) and follow the same tolling procedures as PAGA.  *Chang v. Biosuccess Biotech Co., Ltd.*,

4    76 F.Supp.3d 1022, 1050 (C.D.Cal. 2014); *Caliber Bodyworks, Inc. v. Superior Court*, 134

5    Cal.App.4th 365, 383 (Cal. Ct. App. 2005) (holding that plaintiffs could not pursue civil penalties

6    for a Section 558 violation without complying with the pre-filing notice and exhaustion

7    requirements of PAGA); *Kamar v. RadioShack Corp.,* 2008 WL 2229166, at *14 (C.D.Cal. May

8    15, 2008) ("Because section 558 authorizes recovery of civil penalties and provides for LWDA

9    enforcement, the private right of action authorized in section 2699(a) reaches section 558").

10          Accordingly, Defendant's estimate of an additional $12,750 in Section 558 penalties,

11   based on a full year's worth of violations (26 pay periods), must be reduced to account for the

12   dates of Plaintiff's employment and the limitations period, as with the PAGA penalties.  Section

13   558 provides for a civil penalty of $50 for any initial violation, and $100 for each subsequent

14   violation per pay period.  Cal. Labor Code § 558(a)(1).  The calculations are as follows:

15                    1st Pay Period:                   5 Claims x $50 = $250, plus

16                    4 Subsequent Pay Periods:    5 Claims x $100 x 4 = $2,000

17   The Court therefore finds that the Section 558 penalties in controversy total $2,250.[3]

18                                                    * * *

19          For the reasons discussed above, Plaintiff is only entitled to recover civil penalties for five

20   *pay periods* under both PAGA and Section 558.  Consequently, the total PAGA penalties in

21   controversy for Plaintiff are $4,500, and the total Section 558 penalties in controversy for Plaintiff

22   are $2,250.  As shown below, the amount in controversy now stands at $53,627.48:

| Claim | Amount in Controversy |
|---|---|
| *Meal and Rest Period* | $22,816.37 |

[3] Plaintiff contends that PAGA and Section 558 penalties may not both be recovered. Because the Court concludes that Defendant has not met is burden even with full PAGA and Section 558 recovery, it need not reach this issue of so-called "double recovery."

| | |
|---|---|
| *Overtime* | $15,310.52 |
| *Vacation* | $701.79 |
| *Wage Statement* | $4,000 |
| *Waiting Penalties* | $4,048.80 |
| *PAGA* | $4,500 |
| *§ 558* | $2,250 |
| **TOTAL** | $53,627.48 |
| **AMOUNT NEEDED TO EXCEED $75,000** | $21,372.53 |

### B. Attorney's Fees

Absent attorney's fees, the amount in controversy stands at $53,627.48.  All that remains to be determined is whether Defendant has met its burden to establish that attorney's fees of at least $21,372.53 can also be considered in controversy.

"The amount in controversy includes… attorney's fees, if authorized by statute or contract."  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2006).  Plaintiff's prayer for relief specifically seeks attorney's fees.  (Compl. ¶¶ 8, 23, 33, 38, 42).  Irrespective of whether Plaintiff specifically requests attorney's fees, PAGA authorizes such an award.  "Any employee who prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Labor Code § 2699(g)(1); *see also Patel v. Nike Retail Services*, *Inc.*, 58 F.Supp.3d 1032, 1048 (N.D.Cal. 2014) (prevailing plaintiff in PAGA action may recover attorney fees).

Defendant offers four estimates of attorney's fees for the Court's consideration.  First, in the Notice of Removal, Defendant references, "for the sake of argument" an "extraordinarily conservative estimate" that attorney's fees would be at least $8,977.50.  (NOR at ¶ 19; Suppl. Oppo. at 16:19.)  This is based on an order approving a class action settlement removed under CAFA on which Plaintiff's counsel worked.  (NOR, Exh. H.)  However, that amount is not sufficient on its face to meet the amount in controversy.  Accordingly, the Court considers Defendant's other three proffers, all of which rely upon the premise that attorney's fees in single plaintiff cases serve as useful benchmarks for representative class actions.

United States District Court
Northern District of California

1    For Defendant's second estimate of $47,500, Defendant relies on *Lippold v. Godiva*

2    *Chocolatier, Inc.*, a PAGA class action.  2010 WL 1526441 at *1 (N.D.Cal. Apr. 15, 2010).  In

3    *Lippold*, the court stated that "attorneys handling wage-and-hour cases typically spend more than

4    100 hours on the case." *Id.* at 4.  The court also found persuasive defendant's evidence that "a

5    typical individual wage and hour case generates fees in excess of $100,000." *Id.*  Using *Lippold*

6    as a guide, Defendant reasons that if Plaintiff's attorney's hourly rate is $475, then at a minimum,

7    Plaintiff could accrue $47,500 in attorney's fees.

8    However, since *Lippold*, several district courts have recognized that the Ninth Circuit's

9    holding in *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118 (9th Cir. 2013), has

10    undermined *Lippold*'s reasoning and have declined to extend *Lippold* to PAGA class actions in

11    light of *Urbino*.  In *Urbino*, the Ninth Circuit held that civil penalties under PAGA cannot be

12    aggregated among class members to determine to meet the amount in controversy requirement for

13    federal diversity jurisdiction.  726 F.3d at 1122.  Following *Urbino*, the growing consensus among

14    district courts in California is that attorney's fees similarly cannot be aggregated, but rather they

15    must be pro-rated among putative class members when determining the amount in controversy.

16    *Patel*, 58 F.Supp.3d at 1049 ("When the rule is that claims are not aggregated…(as it is now for

17    PAGA actions under *Urbino*), it would seriously undermine the anti-aggregation rule to allow

18    attorney's fees to be allocated solely to a named plaintiff in determining the amount in

19    controversy") (internal alterations omitted); *Mitchell v. Grubhub Inc.*, 2015 WL 5096420 at *7

20    (C.D.Cal. Aug. 28, 2015) (noting that, following *Urbino*, "several district courts in this Circuit

21    have determined that the amount in controversy in PAGA actions should only include a plaintiff's

22    pro-rated attorneys' fees"); *Perez v. WinnCompanies, Inc.*, 2014 WL 5823064 at *10-11 (E.D.Cal.

23    Nov. 10, 2014) ("in a putative class action, attributing attorneys' fees solely to a named plaintiff

24    for purposes of determining the amount in controversy would be improper, because the plaintiff

25    would not ultimately be entitled to the entirety of that award upon a favorable disposition of the

26    case").

27    The Court finds the reasoning in these cases persuasive, and concludes that post-*Urbino*,

28    "only the portion of attorney's fees attributable to [Plaintiff's] claims count towards the amount in

11

United States District Court
Northern District of California

1    controversy." *Patel*, 58 F.Supp.3d at 1049.  Thus, even if the Court were to accept Defendant's

2    estimate of $47,500 as appropriate, that entire amount cannot be attributed to Plaintiff's claims.

3    Instead, the "amount must be distributed *pro rata*" to all putative class members whom Plaintiff

4    seeks to represent.  *Id.*  Pro-rating Defendant's estimate of attorney's fees for each of the 115 class

5    members only amounts to $413.04 per person.  This is far below the $21,372.53 required to clear

6    the jurisdictional hurdle.  Using this estimate, the delta to exceed $75,000 remains nearly $21,000.

7        Third, Defendant urges the Court to consider *Cagle v. C&S Wholesale Grocers*, in which

8    the district court held that $30,000 was a reasonable, good faith estimate of attorney's fees in a

9    single plaintiff PAGA case.  2014 WL 651923, at *11 (E.D.Cal. Feb. 19, 2014).  Defendant's

10   reliance on this single plaintiff PAGA case does not persuade.  Unlike in *Cagle*, here Plaintiff

11   seeks to represent a putative class of 115 members.  Consequently, attorney's fees must be pro-

12   rated, and the Court cannot accept $30,000 as a reasonable estimate of fees to allow Defendant to

13   meet the jurisdictional threshold.

14       Finally, Defendant proffers $600,000 in attorney's fees based on the holding in *McClease

15   v. Home Depot U.S.A., Inc.*, No. A072070 slip op. (Cal. Ct. App. Aug 8, 1997).[4]  There are three

16   reasons *McClease* cannot carry Defendant's evidentiary burden.  First, the award of attorney's fees

17   in that case was $290,223.05, not $600,000, as Defendant erroneously posits.  *Id.* at 6.  Second,

18   *McClease* is a single plaintiff sex and pregnancy discrimination case, not a wage and hour class

19   action.  Third, *McClease* makes no mention of PAGA.  It is thus difficult to conceive the

20   applicability of *McClease* in the instant matter.  *McClease* is inapposite.[5]

21   _____

22       [4] Defense counsel referenced *McClease v. Home Depot* in her supplemental declaration
     without any citation, providing only the name of the case, that it was upheld by the First District
23   Court of Appeal, "handled by [Defense counsel's] firm several (20) years ago . . . in Alameda
     County," and that there was a "jury award of approximately $69,000" in that case.  (Dkt. No. 19,
24   "Gitt Decl." ¶ 10.)  The Court located the above-referenced First District Court of Appeal's
     decision in *McClease v. Home Depot USA, Inc.*, filed August 8, 1997, where plaintiff McClease
25   was awarded $67,000 in damages.  The similarity in name, date, and damages strongly suggests it
     is the same case.  There, as noted above, the fee award was less than half the amount Defense
26   counsel represented to the Court.  Given the Court's Order here, it will not issue an order to show
     cause why counsel should not be sanctioned for misleading the Court.

27       [5] If the Court were to adopt the figure actually awarded in McClease, $290,223.05, it must
28   be pro-rated among the 115 putative class members.  The resulting amount, $2,523.68, does not
     push the amount in controversy over the threshold.

In addition to the four estimates Defendant's provided in its briefing, Defense counsel submitted a lengthy supplemental declaration focusing on her "personal knowledge" and "long history as a practicing attorney and litigator."  (Gitt Decl ¶ 1.)  For example, Defense counsel details her experience working on a wage and hour case in the Central District of California that recently settled for $3,500,000.  (Gitt. Decl. ¶¶ 16, 17.)  However, Defendant does not reveal the amount the plaintiff's attorney in that case ultimately recovered, only that "[p]laintiffs' counsel stated that he had expended approximately $1,600,000" in attorney's fees over the course of three years of litigation on behalf of a class of approximately 400 employees.  (*Id*.)  Defense counsel does not provide any documentation of the settlement agreement or attorney's fees, or any other means of verifying her summary of the case.  Apart from this settlement, and the misrepresented fee award in *McClease*, Defendant offers no evidence to support its new estimate of $600,000 as recoverable attorney's fees in this PAGA class action.  (Suppl. Oppo. at n.2; Gitt Decl. ¶ 9.)

The fundamental problem with all of Defendant's estimates is that attorney's fees must be apportioned among potential class members for jurisdictional purposes.  *See Patel*, 58 F.Supp.3d at 1049.  If each of the 115 putative class members' pro-rata share of the total attorney's fees were $21,372.53, then the total recovery of attorney's fees alone would have to be 115 times the amount, or at least $2,457,840.95.  *See Millar v. Bank of Am.*, *N.A.*, 2015 WL 5698744, at *5 (N.D.Cal. Sept. 29, 2015) (applying the same formula and concluding "[t]hat result is not possible").  There is no evidence of attorney fees anywhere approaching $2.4 million.

To be sure, Defendant's attempt to appeal to common sense based on the realities of fee recoveries in these types of cases is not lost on the Court.  However, Defendant provides no authority—much less evidence—that would allow the Court to impute a collective fee recovery to a single plaintiff.  Defendant does not even attempt to offer a pro-rated estimate.  Defendant has a burden which it failed to meet, even when given an additional opportunity to supply the Court with evidence sufficient to exercise jurisdiction over the claim.

In lieu of another suitable estimate, the Court uses Defendant's conservative estimate of $8,977.50.  The resulting sum of **$62,604.98** conclusively demonstrates Defendant has not exceeded the amount in controversy threshold to establish diversity jurisdiction.  In fact, even

1    doubling that estimate would be insufficient.

| Claim | Amount in Controversy |
|-------|----------------------|
| *Meal and Rest Period* | $22,816.37 |
| *Overtime* | $15,310.52 |
| *Vacation* | $701.79 |
| *Wage Statement* | $4,000 |
| *Waiting Penalties* | $4,048.80 |
| *PAGA* | $4,500 |
| *§ 558* | $2,250 |
| *Attorney's Fees* | $8,977.50 |
| **TOTAL** | $62,604.98 |

### C.  Plaintiff's Supposed Refusal to Stipulate to Remand

Plaintiff agreed to stipulate to methods of calculation for meal & rest period and PAGA penalties, but declines to make a legally binding commitment to recover less than $75,000 in this matter.  Defendant contends that Plaintiff's refusal to so stipulate is a persuasive factor against remand.  The Court disagrees.  Given the record in this case, and Defendant's failure to establish the amount in controversy even when granted an extra opportunity, Plaintiff's failure to stipulate does not persuade.

"[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement."  *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1349 (2013) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)).  After removal, however, a stipulation alone does not necessarily defeat jurisdiction.  *St. Paul*, 303 U.S. at 292; *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties").  It is the

district court's duty to determine the actual amount in controversy, irrespective of affirmative stipulations or agreements between the parties. *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004) ("a district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments"). Similarly, a plaintiff's failure to stipulate does not "conclusively establish" the amount in controversy exceeds the jurisdictional requirement. *Patel*, 58 F.Supp.3d. at 1039 (citing *Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F.Supp. 1196, 1199 (N.D.Cal. 1998)).

Courts in this circuit have consistently rejected the notion that a plaintiff's refusal to stipulate conclusively demonstrates that the amount in controversy exceeds the threshold. *See, e.g.*, *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650 at *4 (E.D.Cal. July 14, 2010) (holding that refusal to stipulate "alone" is not sufficient to establish the amount in controversy, and noting that "district courts in this circuit have persuasively rejected the proposition that the amount in controversy can be established by a plaintiff's refusal to stipulate to the amount in controversy"); *Rindels v. Tyco Integrated Sec., LLC*, 2015 WL 469013 at *4 (C.D.Cal. Feb. 4, 2015) ("Evidence of failure to stipulate to the amount in controversy requirement is at best a factor in determining the amount, and at worst irrelevant to the determination"); *Conrad Associates*, 994 F.Supp. at 1199 ("since a defect in subject matter jurisdiction cannot be stipulated to or waived, attempting to force the plaintiff to enter a stipulation regarding the potential amount of damages would serve no effect in determining the actual amount in controversy at the time of removal"). While some courts are willing to consider a refusal to stipulate as evidence against a motion to remand, others decline to do so entirely. *See Conrad Associates*, 994 F. Supp. at 1199 (citing cases in which failure to stipulate is not "even persuasive").

While Defendant concedes that a refusal to stipulate "is not dispositive" on the question of remand, it nonetheless argues that Plaintiff's failure to do so here should in and of itself persuade the Court to deny remand. (Suppl. Oppo. at 2:4-5.) However, Defendant proffers no case in which a plaintiff's refusal to stipulate, without more, persuaded a court to deny a motion to remand. All of the cases on which Defendant relies involve a defendant's unrebutted affidavit, declaration, or other compelling showing that concluded the matter irrespective of plaintiff's

refusal to stipulate.  *See Yaralian v. Home Depot U.S.A., Inc.*, 2015 WL 8374911, at *3 (C.D.Cal. Dec. 9, 2015) (defendant presented evidence of plaintiff's pre-litigation settlement demand of $196,000 and plaintiff's refusal to reduce the demand); *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395 (9th Cir. 2010) (defendant submitted an affidavit showing that total billings exceeded $5 million); *Heejin Lim v. Helio, LLC*, 2012 WL 359304, at *3 (C.D.Cal. Feb. 2, 2012) (noting that, where a defendant provided a declaration that more than $5 million in deposits were collected, they "effectively would be required to concede liability were the Court to require a stronger showing"); *Sawyer v. Retail Data, LLC*, 2015 WL 3929695, at *2 (C.D.Cal. Apr. 29, 2015) (refusal to stipulate "weigh[ed] in favor" of denial of motion to remand, but was "not determinative" where defendant presented evidence of plaintiff's past earnings and similar cases where recovery exceeded $75,000).  Here, Defendant's proffer does not rise to the level that would allow the Court to find jurisdiction simply because Plaintiff failed to stipulate.

The Court notes that had Plaintiff stipulated to seek to recover no more than $75,000, it would constitute "the best possible evidence" on the question presently before the Court.  *Patel*, 58 F.Supp.3d. at 1039.  Plaintiff's choice to not so stipulate, however, left the Court to resolve the amount in controversy for itself.  *Id.*  It has done so, and found that the amount in controversy is at most $62,604.98 – well below the jurisdictional threshold.

**IV.   CONCLUSION**

Based upon the foregoing, the Court finds that Defendant has not met its burden of establishing that the amount in controversy in this litigation exceeds the jurisdictional threshold under 28 U.S.C. § 1332.  Therefore, the motion for remand is **GRANTED**.  The clerk is directed to **REMAND** this action to the Superior Court for the State of California, County of Sonoma.

**IT IS SO ORDERED.**

Dated: March 7, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**